IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JEROME WANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:16-cv-660 (LMB/IDD) |
| ) | |
| STEVEN MARK FREI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Jerome Want ("plaintiff" or "Want"), pro se, has filed a six-count complaint alleging malpractice[1] and fraud by his former attorney Steven Mark Frei ("Frei"), and Frei's law firm Sickles, Frei & Mims, P.C., (collectively with Frei, "defendants"), arising out of Frei's representation of Want in a personal injury action filed in the Arlington County Circuit Court. Plaintiff seeks damages of at least $2.59 million plus prejudgment interest at a rate of 12%. Compl. ¶¶ 16–23. Defendants have filed a Motion for Summary Judgment ("Motion"), to which plaintiff has filed a response.[2] The Court finds that oral argument would not aid the decisional process. For the reasons that follow, defendants' motion will be granted.

---

[1] Want divides his malpractice claim among five counts: Count 1 (Failure to Provide a Minimum Standard of Care); Count 2 (Malpractice); Count 4 (Breach of Contract); Count 5 (Non-Feasance); and Count 6 (Malfeasance). Compl. ¶¶ 16–17; 20–22.

[2] Although defendants served plaintiff with a Roseboro notice along with their motion, advising him that he must "identify all facts stated by Defendants with which [he] disagree[s] and set forth [his] version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that is signed under penalty of perjury)," plaintiff's response consists solely of argument, failing to cite any evidence in the record, see generally Pl. Opp. [Dkt. 64]. Moreover, those arguments have not been submitted under penalty of perjury. See id.

## I. BACKGROUND

In his complaint, Want alleges that on January 28, 2009, he visited a 7-Eleven in Virginia, where he slipped and fell on snow and ice that had accumulated outside the store's entrance. Def. Memo. Ex. 1 ¶ 3. Want hired two lawyers, Jeffrey Downey ("Downey") and John Wilson ("Wilson"), who filed a complaint against 7-Eleven, Inc., and 7-Eleven Virginia, Inc., on March 5, 2010, in the Arlington County Circuit Court alleging that the store had negligently maintained its property by failing to keep it clear of snow and ice. Def. Memo. Ex. 2. The complaint sought $389,000 in damages, plus costs and interest. Id. at 4. Two months later, Downey and Wilson withdrew from their representation of Want. Def. Memo. Ex. 1 ¶ 4.

In July 2010, Want hired defendants to represent him in the slip and fall action, with Frei taking the lead. Def. Memo. Ex. 1 ¶ 5. Want informed Frei that his treating physician, Dr. John K. Starr ("Dr. Starr"), diagnosed him with significant lower back injuries, requiring spinal surgery and long-term therapy. Id. at ¶ 6. Want told both Dr. Starr and Frei that he had no history of back pain before the slip and fall. Id. at ¶¶ 6, 11, 12. According to Want, Dr. Starr was therefore prepared to testify that the accident caused his back problems. Id. at ¶ 6. Based on this representation, Frei successfully moved the court for an increase in the damages to $1.25 million. Id. at ¶¶ 7–8.

Through discovery, 7-Eleven obtained medical records from the Virginia Hospital Center ("VHC") that Want had not disclosed to 7-Eleven, Frei, and Dr. Starr. Def. Memo. Ex. 1 ¶¶ 10–12. These records showed that in January 2008, Want visited the VHC multiple times complaining of lower back pain. [Dkt. 62-3] at 7–12. He rated his pain at that time to be a 3 on a scale of 1–10. Id. at 7. Those records show that Want told VHC doctors that he had back pain "flare ups every 2–3 [years]." Id. at 10. For at least four to five years before that visit, he

reported pain on an "almost daily basis." Id. The records showed that his back problems first began almost 30 years earlier, after Want was involved in a car accident. [Dkt. 62-6] at 1.[3]

On March 23, 2011, 7-Eleven presented those records to Want and Frei during Want's deposition. Def. Memo. Ex. 1 ¶ 10. The next day, Frei passed them along to Dr. Starr to determine whether they would alter his conclusion that the slip and fall was the source of Want's injuries. Id. at ¶ 11. The day after that, Dr. Starr replied that he would no longer be able to offer an opinion on causation. Id. at ¶ 12. By then, the window for identifying expert witnesses in the circuit court action had closed, meaning that it was too late to find a new expert witness to support Want's negligence claim. Id. at ¶ 13. Frei counseled Want that rather than proceeding to trial without an expert witness, it would be in his interest to voluntarily dismiss the action and then refile it if he could locate another expert. Id. at ¶ 14. Although the original statute of limitations had run by March 2011, under Virginia rules Want would have six months to refile the lawsuit. See Va. Code § 8.01-229(E)(3).

After receiving this advice, Want agreed to voluntarily dismiss the personal injury action. Def. Memo. Ex. 10. Frei filed the dismissal motion only as to 7-Eleven, Inc., inadvertently omitting 7-Eleven Virginia, Inc. Def. Memo. Ex. 1 ¶ 7. Frei eventually caught the mistake, and by orders entered on April 27, 2011, and June 24, 2011, the cases against both defendants were voluntarily dismissed. Id.

On June 20, 2011, at 1:56 p.m., Want sent Frei an email that read, "Be advised, that I have filed a complaint against you and your firm with the State Bar[.] I will not stop there." Def. Memo. Ex. 13. At 4:30 p.m., Frei replied, "I am sorry to read this but it seems consistent

---

[3] Through Defendant's [sic] First Set of Requests for Admission, which this Court deemed admitted after Want failed to respond [Dkt. 53], Want has admitted that he had a "history of back pain prior to" the slip and fall and had "never reported" that history to Dr. Starr before March 2011. See [Dkt. 62-3] at 2.

with the way you have elected to treat virtually everyone associated with your case, including doctors. Since you have complained to the Bar Association regarding my conduct I can obviously no longer represent you. Please advise me ASAP where you would like your file sent." Def. Memo. Ex. 14.

Want did not reply until Monday, August 15, 2011, when he wrote, "Kindly forward my entire file . . . to Attorney Michael Epstein . . . so that he can determine if he will take the case. Please do immediately [sic]. I strongly recommend that you do nothing to dissuade him." Def. Memo. Ex. 15. On August 23, 2011, Frei complied by sending Want's file to Epstein. Def. Memo. Ex. 16. In the cover letter, Frei specifically highlighted the dates by which Want would have to refile his personal injury action to avoid the action becoming time barred. Id. As of August 23, Want still had about two months to refile against 7-Eleven, Inc., and nearly four months to refile against 7-Eleven Virginia, Inc. See id.[4]

There is no evidence in the record of any further interaction between Want and Frei until Want filed this federal civil action on June 2, 2016, which was transferred to this district from the District of Maryland on June 14, 2016. On August 8, 2016, this Court issued a scheduling order setting the Final Pretrial Conference for December 15, 2016. That Order required the parties to "file on or before the final pretrial conference the Rule 26(a)(3) disclosures and a list of the exhibits to be used at trial, a list of the witnesses to be called at trial, and a written stipulation of uncontested facts." [Dkt. 16] (emphasis omitted). The Order explicitly warned the parties, in underlined text, that "[e]xhibits not so disclosed and listed will not be permitted at trial except

---

[4] Frei also indicated in the cover letter that he and his firm had "decided to waive any fee for professional services" for their work in Want's case, but were still seeking reimbursement for costs. Def. Memo. Ex. 16. There is no evidence in the record of Frei ever receiving this payment.

4

for impeachment or rebuttal, and no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained." Id. (emphasis omitted). Despite these warnings, Want failed to appear for the final pretrial conference and to date has not filed either a witness list or exhibit list.

## II. DISCUSSION

Defendants have moved for summary judgment, arguing that Want's fraud claim is time barred and that his legal malpractice claims fail because he has not produced any admissible evidence to prove that defendants fell short of the duty of care or that any breach of that duty prevented Want from successfully pressing his claim.

### A. Standard of Review

Summary judgment is appropriate where the record demonstrates that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the Court must view the record "in the light most favorable to the non-moving party," Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 324 (4th Cir. 2012), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to overcome summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Am. Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009). Rather, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Moreover, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment. Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). Instead,

5

the dispute must be both "material" and "genuine," meaning that it must have the potential to "affect the outcome of the suit under the governing law." Id.

Where the nonmoving party bears the burden of proof, the party moving for summary judgment may prevail by showing "an absence of evidence to support" an essential element of that party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–25 (1986); see also Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 94 (4th Cir. 2011). Once the moving party has successfully demonstrated that absence, the nonmoving party must "come forward with specific facts," rather than "metaphysical doubt[s]" or conclusory allegations, that prove that there is a genuine dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotations omitted); see also Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010). Failure to do so "renders all other facts immaterial" and entitles the movant to judgment as a matter of law. Rhodes, 636 F.3d at 94. Under Fed. R. Civ. P. 56(c), "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." The court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion;" however, "those inferences must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995) (internal quotations and citations omitted).

### B. Fraud

In Count 3, Plaintiff alleges that Frei committed fraud "by not informing his client that he would withdraw from the case, especially if he was required to expend monies for deposition(s)

of medical professionals." Compl. ¶ 19. In Virginia,[5] an action for fraud must be filed within two years of the date by which the alleged fraud "is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code §§ 8.01-243(A); 8.01-249(1). Although the complaint does not make it clear when the allegedly fraudulent statements were made, from the complaint's description of the events the allegedly fraudulent nature of the statements should have been clear by June 20, 2011, the date on which Frei informed Want that defendants were withdrawing from his case. See Def. Memo. Ex. 14. Accordingly, any fraud action had to be filed by June 20, 2013. Want filed this civil action on June 2, 2016, nearly three years late. Accordingly, defendants are entitled to summary judgment on Count 3, which is time-barred.

### C. Malpractice

In Counts 1, 2, 4, 5, and 6, plaintiff alleges various forms of legal malpractice. The thrust of these allegations is that Frei failed to engage in sufficient discovery, lost Want's gym attendance records, failed to "properly or expeditiously" prosecute the case, and left Want "without necessary resources at a time when he most needs them given his injuries." Compl. ¶¶ 16–22. Defendants argue that plaintiff cannot show that the duty of care was breached or that any breach resulted in damage to the plaintiff.

Although plaintiff has styled his malpractice counts under various titles ("failure to provide a minimum standard of care," "malpractice," "breach of contract," "non-feasance," and "malfeasance"), Virginia considers an allegation of legal malpractice to be "a claim for breach of contract." Baserva v. Remes, 2009 WL 1392532, at *1 (E.D. Va. May 18, 2009) (citing O'Connell v. Bean, 263 Va. 176, 556 (2002)). A plaintiff alleging legal malpractice must

---

[5] Virginia law governs this diversity action. See Erie R. Co. v. Tompkins, 304 U.S. 64, 77–78 (1938); Klaxon v. Stentor Mfg. Co., 313 U.S. 487, 496 (1941).

demonstrate three elements: "1) the existence of an attorney-client relationship . . . ; 2) a breach of that duty by the attorney; and 3) damages that are proximately caused by that breach of duty." Williams v. Joynes, 278 Va. 57, 62 (2009). To demonstrate proximate causation, a plaintiff "must present sufficient evidence to convince the fact finder in the malpractice case that he would have prevailed in the underlying case absent the attorney's alleged negligence." Whitley v. Chamouris, 265 Va. 9, 11 (2003).

Want has alleged that defendants failed to live up to their professional obligations in a variety of ways.[6] Several allegations accuse Frei of engaging in inadequate discovery. For example, Want alleges that Frei did not depose "Want's former primary care physician, Mandana Shaifi, MD, who agreed to be deposed where she would state that she had not treated me for any back condition and that the patient had not complained about any back condition while under her care." Compl. ¶ 16; see also Pl. Opp. 4. More generically, Want claims that Frei did not "properly or expeditiously prosecut[e] the case" or call or depose witnesses, id. at ¶ 17, or prepare Want for his own deposition, id. at ¶ 16. Want's complaint also contains cursory allegations of other shortfalls, including failure to keep Want fully informed, failure to attempt to negotiate a settlement, failure to cooperate with opposing counsel, and failure to warn Want that he would withdraw from the case. Compl. ¶¶ 16–22.

"Virginia law . . . requires expert testimony" about the standard of care "in all but the most flagrant of professional malpractice actions," Shortt v. Immigration Reform Law Inst., 480 Fed. App'x 209, 210 (4th Cir. 2012); see also Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 433 (1995). Want has not produced any expert evidence to establish

---

[6] These are drawn primarily from the Complaint. Plaintiff's opposition to defendants' Motion mostly complains about failures of the Virginia Hospital Center, not defendants. See generally [Dkt. 64].

the standard of care or to provide an opinion as to whether any of the alleged conduct would have constituted a breach of that standard. Accordingly, Want cannot satisfy the second element of a legal malpractice action.

Even if the second element were established, Want cannot succeed on the third element of his malpractice claims because none of the alleged acts of malpractice prevented Want from timely refiling his personal injury case following the non-suit. On June 20, 2011, when Frei withdrew as Want's attorney, Want still had four months to refile his lawsuit against 7-Eleven, Inc., and six months to refile against 7-Eleven Virginia, Inc. There is no evidence that Frei or his firm took any action that would have impeded Want's ability to refile his claim or find a new attorney.[7] On the contrary, on the same day Want notified Frei about the complaint he had filed against the defendants, Frei immediately notified Want that he was withdrawing from representing him.[8] Def. Memo. Ex. 14. Want did not respond to Frei for nearly two months. See Def. Memo. Ex. 15. When he finally directed Frei to send his file to Epstein, Frei complied within eight days, and specifically alerted Epstein and Want to the crucial dates for refiling Want's claims. Def. Memo. Ex. 15, 16.

In light of this chronology, Want cannot demonstrate that any of the myriad acts of alleged malpractice proximately caused his failure to recover for the slip and fall even assuming he had a meritorious personal injury claim, because his failure to timely refile the action constitutes a superseding cause of his failure to recover. See Kellermann v. McDonough, 278 Va. 478, 493–94 (2009) ("[A] superseding cause of an injury constitutes a new effective cause

---

[7] Although Want's complaint alleges that Frei "lost the attendance report from Frei's fitness center," Want has not explained how that document would have been relevant to his case. Mere allegations cannot be used to defeat summary judgment. See Fed. R. Civ. P. 56(c).

[8] The Virginia State Bar's Rules of Professional Conduct obligated Frei to withdraw as soon as Want filed such a complaint. See Va. Rules of Prof'l Conduct R. 1.8(a)(2) & cmt. [4] (2017).

9

and operates independently of any other act, making it and it only the proximate cause of injury." (internal citations and quotation marks omitted)).

A plaintiff's inability to satisfy even one element of his claim is a sufficient basis for awarding the defendants summary judgment. See Rhodes, 636 F.3d at 94. As discussed above, plaintiff has failed to establish the second and third elements of his legal malpractice claims. Accordingly, defendants are therefore entitled to summary judgment on Counts 1, 2, 4, 5, and 6.

### III. CONCLUSION

For the reasons stated above, the defendants' Motion will be GRANTED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 23 day of January, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge